**LIGHTNING LUBE, INC., t/a Laser Lube, Inc., Plaintiff, and Counterclaim Defendant,**

v.

**WITCO CORPORATION, et al., Defendants, Counterclaimants, and Third–Party Plaintiffs,**

v.

**Ralph VENUTO, et al., Third Party Defendants.**

**Civ. A. No. 87–3242 (WGB).**

United States District Court, D. New Jersey.

Dec. 17, 1992.

---

Steven M. Kramer & Associates by Jeffrey Nowak, Camden, NJ, Steven M. Kramer & Associates by Steven M. Kramer, New York City, for plaintiff.

Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart by John Gilfillan, Brendan T. Byrne, Roseland, NJ, Cravath, Swaine & Moore by Ronald Rolfe, New York City, for defendants.

## OPINION

BASSLER, District Judge:

This matter comes before the Court on the renewed motion of plaintiff and counterclaim defendant, Lightning Lube, Inc., t/a Laser Lube ("Lube"), and third-party defendant Ralph Venuto (collectively, the "Movants"). The Movants seek sanctions under Fed.R.Civ.Pro. 11 and attorneys' fees in the amount of $1,393,267.00 under 28 U.S.C. § 1927 against defendant and

counterclaimant Witco Corporation ("Witco") and its counsel, Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart ("Carella, Byrne"). For the following reasons, the motion is denied.

## Background

This action arose out of a contract dispute over the supply of oil to Lube by Witco's Kendall Refining division ("Kendall"), the facts of which have been narrated in the prior opinions of this Court.[1] In this, the seventy-first motion upon which the Court has ruled since the filing of this case, the Movants seek sanctions, attorneys' fees and costs against Witco and its counsel for their commencement and pursuit of certain counts in a counterclaim.

The counts at issue are contained in Defendants' June 30, 1989 Answer to First Amended Complaint, Affirmative Defenses, Amended Counterclaim, Amended Third–Party Complaint and Jury Demand (the "Counterclaim"). The Counterclaim contained fourteen counts. The first three counts sounded in contract; the fourth count, in quantum meruit; and the fifth count, in unjust enrichment. The sixth and seventh counts sought damages against Mr. Venuto and his wife on their personal guaranty of Lube's unpaid accounts. The eighth count alleged violations of Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a), and the ninth count charged unfair competition under state law. The tenth and thirteenth counts alleged trade defamation; the eleventh alleged interference with present business advantage, the twelfth alleged interference with prospective business advantage; and the fourteenth alleged fraud and trade defamation.

Prior to the trial, Witco sought to withdraw certain counts of the Counterclaim. The Movants, however, opposed withdrawal. On April 30, 1992, at the close of Witco's case, this Court granted the Movants' motion for judgment as a matter of law pursuant to Fed.R.Civ.Pro. 50(a) and dismissed counts eight (federal trademark—false designation of origin), nine

(state common law unfair competition), ten and thirteen (trade defamation), and fourteen (fraud and trade defamation). The Movants' argument, essentially, is that because the Court granted their motion for judgment as a matter of law on counts eight, nine, ten, thirteen and fourteen, Witco and its counsel should be sanctioned and have fees assessed against them for bringing those counts.

## Discussion

### I. Jurisdiction

On September 3, 1992, Witco filed a notice of appeal from the Judgment Order of September 2, 1992, 802 F.Supp. 1180, granting in part and denying in part Witco's motions under Fed.R.Civ.Pro. 50(b) and 59. This motion was filed prior to the filing of the notice of appeal.

■ Generally, the filing of a valid, timely notice of appeal transfers jurisdiction of a case from the district court to the court of appeals. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 401–02, 74 L.Ed.2d 225 (1982); *see Hovey v. McDonald*, 109 U.S. 150, 157, 3 S.Ct. 136, 140, 27 L.Ed. 888 (1883). The Third Circuit has stated that

[t]his rule is not based on statutory provisions or the rules of procedure. Rather, it is a judge-made rule designed to avoid confusion or waste of time that might flow from putting the same issues before two courts at the same time....

*United States v. Leppo*, 634 F.2d 101, 104 (3d Cir.1980) (citing 9 Moore's Federal Practice ¶ 203.11 (1980)). The decision as to whether jurisdiction exists in the trial or appellate court, or in both, " 'can be the product of reasoned choice.' " *Id.* (quoting *United States v. Dunbar*, 611 F.2d 985, 987 (5th Cir.1980)); *see generally* Allan Ides, The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed, 143 F.R.D. 307, 325–26 (1992).

■ The district court may act in aid of the appeal—for example, by correcting

---

1. This case was commenced in August 1987. A three-month jury trial was conducted before this Court in the spring of 1992. The litigation also

has spawned a recent suit for malicious prosecution brought by Mr. Venuto against Carella, Byrne now pending before this Court.

clerical mistakes in the record, approving appeal bonds, and issuing stays or injunctions pending the appeal. 16 Wright, Miller, Cooper & Gressman, Federal Practice & Procedure § 3949, at 359 (1977). Moreover, it retains jurisdiction over matters collateral to the appeal, such as determining costs and attorneys' fees. *Apostol v. Gallion,* 870 F.2d 1335, 1337 (7th Cir.1989); *Garcia v. Burlington Northern R.R.,* 818 F.2d 713, 721 (10th Cir.1987). A Rule 11 sanction is not a judgment on the merits of an action; rather, it is a collateral matter. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990); *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 98 (3d Cir.1988). Accordingly, this Court has jurisdiction to consider this motion and to impose sanctions or award fees after the filing of a notice of appeal.

## II. Fed.R.Civ.Pro. 11

■ Rule 11 provides that the signature on a document submitted to the court constitutes a certification that

> the signer has read the [submission]; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.Pro. 11. The rule imposes a duty on client and counsel to " 'Stop, Think, Investigate and Research' " before filing papers with the court. *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir.1987). Sanctions are to be imposed on the signer and/or the represented party when submissions do not comply with the requirements of the rule. Fed.R.Civ.Pro. 11.

■ In considering Rule 11 sanctions, the Court "is expected to avoid using the wisdom of hindsight." Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.Pro. 11. Rather, the inquiry is "what was reasonable to believe at the time the pleading, motion or other paper was submitted." *Id.* Rule 11 sanctions, moreover, are reserved for "the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir. 1988). The rule is not to be utilized as a fee shifting device to contravene the American rule that each litigant covers its own legal expenses. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 409, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990); *Gaiardo,* 835 F.2d at 483. Consequently, sanctions are not appropriate when a party's "only sin was being on the unsuccessful side of a ruling...." *Gaiardo,* 835 F.2d at 483.

This is the second time that the Movants have made this argument before this Court. In an opinion dated November 21, 1990, this Court, per the Hon. Joseph H. Rodriguez, refused to impose Rule 11 sanctions because "counsel for Witco conducted a reasonable investigation of the facts and performed a competent level of legal research with regard to Counts Eight, Nine, Ten, Eleven, Twelve, Thirteen and Fourteen contained in its amended third-party complaint." Slip Opinion at 4. The Court, however, indicated that "plaintiff may renew his claim for sanctions at the close of trial if the evidence indicates sanctions are appropriate." *Id.*

### A. Sanctions Against Carella, Byrne

■ The Counterclaim was signed by Benjamin D. Liebowitz, Esq., who at the time of the signing was associated with Carella, Byrne. The Movants seek sanctions against Carella, Byrne, and not against Mr. Liebowitz himself.[2] But Rule 11 does not authorize the imposition of sanctions against the signing attorney's law firm. *Pavelic & LeFlore v. Marvel Entertainment Gp.,* 493 U.S. 120, 110

---

**2.** The Movant's Notice of Motion, filed May 22, 1992, is captioned "Motion and Notice of Motion for Sanctions against Witco and its attorneys, the Law Firm of Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart...."

S.Ct. 456, 107 L.Ed.2d 438 (1989). "Just as the requirement of signature is imposed upon the individual, we think the recited import and consequences of the signature *run as to him.*" *Id.* at 124, 110 S.Ct. at 459 (emphasis in original). Accordingly, Rule 11 sanctions cannot be imposed on Carella, Byrne.

## B. Sanctions Against Witco

■ The Movants also seek sanctions against Witco. Rule 11 states that "the court ... shall impose upon the person who signed it, a represented party, *or both,* an appropriate sanction...." Fed.R.Civ.Pro. 11 (emphasis added). Thus, "[e]ven though it is the attorney whose signature violates the Rule, it may be appropriate under the circumstances of the case to impose a sanction on the client." Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.Pro. 11 (citing *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078 (2d Cir.1977)).

Initially, this Court questions whether it can impose Rule 11 sanctions on Witco, whose signature does not appear on the Counterclaim. The Supreme Court has held that Rule 11 imposes the same requirement—an objectively reasonable pre-filing inquiry[3]—on a client who *signs* a paper filed with the court as it imposes on an attorney who does so. *Business Guides v. Chromatic Communications Ent.,* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). The Court, however, explicitly did not determine "whether or under what circumstances a non-signing party may be sanctioned." *Id.* 111 S.Ct. at 935.

The Third Circuit, albeit in dicta, seems to have interpreted *Business Guides* to mean that a client who has not signed the offending document cannot be sanctioned under Rule 11. *Lony v. E.I. DuPont De Nemours & Co.,* 935 F.2d 604, 617 n. 4 (3d Cir.1991) ("Indeed, it is unclear from this record whether there is any signature of DuPont's which could form the basis for invocation of Rule 11 against it. *See Business Guides,* 111 S.Ct. at 928–29, 933.").[4] Since the Movants only identify the Counterclaim as the offending document and Witco did not sign it, there is no basis to impose Rule 11 sanctions against Witco.

■ Moreover, even if sanctions against Witco were permissible, this Court finds them inappropriate. In arguing that sanctions are warranted, the Movants misguidedly focus on the facts that "Witco never even attempted to dismiss the counterclaim, or any part thereof, during any stage of this litigation prior to trial"[5] and that at trial the Court dismissed certain of the counterclaims as a matter of law. Moving Brief at 1–2. However, as the Third Circuit has recognized, "proper Rule 11 analysis should focus on the circumstances that existed at the time counsel filed the challenged paper. Imposing a continuing duty on counsel to amend or correct a filing based on after-acquired knowledge is inconsistent with the Rule." *Mary Ann Pensiero, Inc. v. Lingle,* 847

---

**3.** The Third Circuit has set forth four factors to be considered in assessing the reasonableness of an attorney's inquiry: (1) the amount of time available to the signer for conducting the factual and legal investigation; (2) the necessity for reliance on the client for the underlying factual information; (3) the plausibility of the legal position advocated; and (4) whether the case was referred to the signer by another member of the bar. *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 95 (3d Cir.1988). As the Court in *Business Guides* noted, however, the precise conduct that is necessary on the part of a client to comply with the rule will obviously vary, because "what is objectively reasonable for a client may differ from what is objectively reasonable for an attorney." *Business Guides,* 111 S.Ct. at 933.

**4.** Other courts whose views are not binding on this Court, however, have interpreted Rule 11 as not requiring the client's signature in order for the client to be sanctioned. *See United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1344 n. 3 (2d Cir.1991); *Donohoe v. Consolidated Operating & Production,* 139 F.R.D. 626, 631 (N.D.Ill.1991); *see also Greenhouse v. United States,* 780 F.Supp. 136, 147 (S.D.N.Y.1991).

**5.** Even if Witco had voluntarily dismissed some of the counts of the Counterclaim, that would not necessarily dispose of the issue of Rule 11 sanctions since the violation of the Rule is complete when the offending paper is filed. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

F.2d 90, 95 (3d Cir.1988); *Gaiardo*, 835 F.2d at 484.

 There is no more reason to conclude that Witco abused the judicial process because certain counts in its Counterclaim were eventually found to be legally wanting than to reach a similar conclusion against the Plaintiff because its Robinson Patman Act claims were dismissed in response to Witco's Rule 50 motion. *See* Tr. at 4304. Moreover, the mere fact that doubtful counts may have been included among meritorious ones does not alone mandate Rule 11 sanctions.[6] *See Lingle*, 847 F.2d at 97. In addition, this Court finds no reason to disturb Judge Rodriguez's previous denial of Rule 11 sanctions.

 In determining whether sanctions are appropriate, the court may also consider "the derelictions of counsel on both sides." *Waltz v. County of Lycoming*, 974 F.2d 387, 390 (3d Cir.1992). During the trial, Movants' attorney, Mr. Steven M. Kramer, approached Rufus Knowlin, Idella Pollack, and Robert Roe, three of Witco's witnesses, shortly before their testimony. Based on the voir dire of these witnesses outside the presence of the jury, the Court concluded that Mr. Kramer had contacted the witnesses in order to induce them to testify favorably on behalf of his clients.[7] In its opinion filed on September 2, 1992, the Court stated that

> [t]here is no doubt in this Court's mind that Mr. Kramer's approach to the witnesses was done to improperly influence

their testimony adversely to Witco. The circumstances surrounding his approach to the witnesses, the time of opening settlement discussions of a witness' claim against Lube on the eve of trial, and Mr. Knowlin's own evaluation of Mr. Kramer's conduct ( ... Tr. 4703; Tr. 4697–4698) all serve to depreciate Mr. Kramer's dissembling disavowal of an errant motive.

Slip opinion at 1200 n. 10.

It is inconceivable that Mr. Venuto did not authorize or acquiesce in Mr. Kramer's conduct. The approach was made when Plaintiffs' trial fortunes seemed to be at their lowest ebb. Mr. Kramer would not have initiated settlement discussions of a witness' claims against Lube without Mr. Venuto's authorization. There also was no indication during colloquy with counsel that Mr. Kramer was acting without his client's express or implied permission. Although the Court determined that Mr. Kramer's actions did not in fact affect the witnesses' testimony, the conduct jeopardized the integrity of the trial.

Accordingly, even if sanctions were called for, this egregious conduct would preclude imposing them. The motion for Rule 11 sanctions is therefore denied.

### *III. 28 U.S.C. § 1927*

 Section 1927 provides that [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof

---

6. Counts eight through fourteen of the Counterclaim survived a motion for summary judgment in 1990. Moreover, the jury found the remaining counts to be meritorious. With respect to Witco's contract claims, the jury found that Lube and Mr. Venuto breached their contract with Witco by failing to pay Witco for equipment and awarded Witco damages in the amount of $46,261.69. *See* Special Verdict Form, Questions 64–67. The jury further found that Lube and Venuto breached their contract with Witco by failing to pay Witco for oil and awarded $11,283.52 in damages. *See id.,* Questions 68–71. With respect to Witco's claims for quantum meruit, the jury found that Witco was damaged in the amount of $355,859.18 as a result of providing equipment to Lube and in the amount of $86,796.32 as a result of providing oil to Lube. *See id.,* Questions 72–77. Although awarding no damages, the jury also

found in favor of Witco on the claims of unjust enrichment. *See id.,* Questions 78–83. The jury also found in favor of Witco on the claim against Mr. and Mrs. Venuto on their personal guaranty, and awarded Witco $442,655.50 in damages. *See id.,* Questions 84–86. Furthermore, although it did not award damages to Witco on the claims of interference with present and future business advantage, the jury concluded that Lube and Mr. Venuto "intentionally and maliciously encouraged Lightning Lube franchises to discontinue purchasing and/or using Kendall oil or otherwise to discontinue doing business with Kendall." *See id.,* Question 89–90.

7. *See* Tr. 4677–4706 (Knowlin); Tr. 4685–4736 (Pollack); Tr. 4442–4457 (Roe).

who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Sanctions cannot be assessed against Witco under Section 1927, because the statute "by its terms ... is not directed to parties." *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1190 (3d Cir.1989) (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir.1987). Sanctions can be assessed against a law firm, however. *Brignoli v. Balch Hardy & Scheinman, Inc.*, 735 F.Supp. 100, 101–02 (S.D.N.Y.1990).

■ In order to penalize Carella, Byrne under Section 1927, there must be a showing that they acted in subjective bad faith. *Baker Indus. v. Cerberus Ltd.*, 764 F.2d 204, 208–09 (3d Cir.1985); *see, e.g., Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir.1990); *Williams v. Giant Eagle Mkts.*, 883 F.2d 1184, 1191 (3d Cir.1989); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir.1987). This requirement is imposed out of fear of chilling attorneys' zealous advocacy on behalf of their clients. *Baker Indus.*, 764 F.2d at 208. The Third Circuit has stated that:

> [i]f it were otherwise, an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees under section 1927. We do not read the language of section 1927, which explicitly requires 'unreasonabl[e]' conduct before attorneys' fees may be taxed, to impose such a burden absent actions taken which are tantamount to willful bad faith.

*Id.* at 209.

■ "An action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment and delay, or for otherwise improper reasons." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977); *see Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir.1986) (defining bad faith as

"intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay."). In determining whether bad faith exists,

> it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that because a [party] did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight could discourage all but the most airtight claims....

*Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1193 (3d Cir.1989). (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). The Court's power to sanction attorneys under Section 1927 should be used with restraint. *Id.*

■ The facts of this case do not demonstrate the requisite bad faith. The filing of the Counterclaim itself was not an act of bad faith. Initially, it must be observed that it was Lube and Mr. Venuto who commenced this litigation, and that the counterclaims were brought in response to their actions. Moreover, there is no evidence, as distinguished from argument, that the counterclaims were asserted in order to gain any financial or strategic advantage over Lube and Mr. Venuto. There is also no basis for concluding, just because certain counts of the Counterclaim did not survive the Rule 50(a) motion, that they were asserted in bad faith. To do so would be to embrace precisely the post-hoc reasoning that the Third Circuit has cautioned against. *See Williams*, 883 F.2d at 1193. Moreover, the evidence in the record does not indicate either that the allegations in the Counterclaim were baseless or that Carella, Byrne asserted or pursued them in bad faith or for the purpose of harassment or delay.

The eighth and ninth counts of the Counterclaim alleged that Lube and Mr. Venuto intentionally caused certain Lube franchises to use oil from sources other than Kendall while continuing to use the Kendall name and mark in violation of federal trademark and state unfair competition laws. Counts eight and nine were based on

the knowledge of two Witco employees, Mr. Glady and Mr. Corwin, that Lube franchisee Alan Fischer had told Mr. Venuto that he was selling Arco oil while maintaining the Kendall sign, that Mr. Venuto allowed Mr. Fischer to continue doing so, and that Lube controlled the oil dispensed by its franchisees through oil equipment leased by Lube. Opposition Brief at 4. The Movants respond that Mr. Fischer's trial testimony that Mr. Venuto had no involvement with his decision to sell Arco oil (Tr. 6472–3) and Mr. Glady's disavowal of any connection with the Counterclaim (Tr. 1038) indicate the baselessness of counts eight and nine. Reply Brief at 9. The Movant's reading of Mr. Glady's testimony, however, is overbroad. Mr. Glady was asked whether he participated in drafting or formulating the Counterclaim, to which he answered no. Moreover, despite Mr. Fischer's trial testimony, when the Counterclaim was filed, it was reasonable to conclude that Mr. Fischer must have been selling Arco oil with Mr. Venuto's acquiescence. The lease/purchase agreements between Lube and its franchisees required that the latter use only oil produced by Lube. *See* Defendant's exhibit 1382.

Count ten alleged trade defamation—that Mr. Venuto and Lube intentionally and falsely disparaged the products of and intentionally made false accusations against Kendall and Witco. This count was based on the fact that two days after the filing of the initial complaint in this matter, Mr. Venuto circulated it among his franchisees. That complaint contained allegations of conspiracy, fraud, extortion, antitrust violations, and misrepresentation. Moreover, the attorney for Lube and Mr. Venuto subsequently made extrajudicial statements to the press which were found by Magistrate Judge Simandle "to have been calculated to harass and harm Witco, with the hope of possibly coercing a favorable settlement ... based upon the prominent disclosure of confidential information." Opinion of May

4, 1990 at 3–5. It was not unreasonable to conclude that this conduct indicated an intent not to inform the franchisees but to harm Witco.

The thirteenth and fourteenth counts alleged trade defamation and fraud. Specifically, Witco alleged that Mr. Venuto, Lube, and Automotive Management Systems, Inc., with the intent to induce reliance, falsely represented to Kendall that Lube would provide its franchisees with goods and services that would economically justify its franchisees paying higher prices for Kendall products and equipment. Witco further alleged that Kendall relied upon those representations. The evidence in this regard is not so barren so as to permit this Court to infer that counsel acted in bad faith.[8]

The Movants argue, in addition, that certain allegations made by Witco's counsel in the opening and closing statements, as well as statements to the effect that "we'll bury you" and "looks like you won't be able to sell any more franchises now, will you, Ralph," support the thesis that the Counterclaim was filed in bad faith. These arguments, however, miss the mark. The validity or invalidity of these statements does not demonstrate that Witco's counsel did not have both a colorable claim and sufficient facts upon which to assert and litigate the counts in the Counterclaim. Moreover, improper statements and improper opening and closing remarks present issues different than those raised by Section 1927: the unreasonable and vexatious multiplication of litigation.

■ Even if Carella, Byrne had acted in bad faith in bringing the dismissed counts of the Counterclaim, the Movants would not automatically be entitled to recover counsel fees. A trial court may, in its discretion, refuse to assess attorneys' fees under Section 1927 "even where it finds the existence of bad faith, if, in balancing the equities, it nevertheless determines that an

---

**8.** Lube and Mr. Venuto represented that they were going to open one thousand franchises and explained their program to Kendall. Tr. 2729–2730, 3204. Lube presented its offering plan to Kendall with the assurances that Lube would adequately support the franchisees in exchange for franchise fees; there is sufficient evidence that Lube did not furnish the promised support. See Tr. 4550, 6362–6363, 6368, 4479–4480, 4482–4483, 4470–4474.

award in a particular case would not serve the interests of justice." *Ford v. Temple Hospital,* 790 F.2d 342, 347 (3d Cir.1986). Thus, counsel fees may be denied when, for example, neither party acted in good faith. *Id.* at 347 n. 6.

Upon balancing the equities and considering the actions of Movants and their counsel in this litigation, this Court finds that under no circumstances would an award of counsel fees be justified. In light of the pernicious conduct of Movants' counsel, previously discussed, an award of counsel fees under Section 1927 would be wrong. The maxim of clean hands may be antiquated, but it is not extinct.

 Finally, the Movants' motion for counsel fees must fail because they have not supported it with specificity. A party seeking counsel fees must attempt to allocate or identify the excess work reasonably incurred to meet the alleged misconduct. *See Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1089 (2d Cir.1977); *Coleman v. Frierson,* 607 F.Supp. 1566, 1583 (N.D.Ill.1985). Mr. Kramer, the Movants' attorney, has requested $1,393,267.00, asserting that it represents his fees for the time spent defending the Counterclaim. This amount was chosen, however, solely because it allegedly constitutes "50% of the total hours expended" on the case. *See* Affidavit of Steven M. Kramer dated June 6, 1992, ¶ 5. This is not sufficient. Additionally, the Movants have not complied with Rule 46A of the General Rules for the District of New Jersey ("Local Rule 46A"). Nowhere did Mr. Kramer delineate the nature or dates of the services rendered; the time spent; or the identity or billing rates of the person(s) involved, all of which are required by Local Rule 46A.

Accordingly, this Court will not award counsel fees under Section 1927. The motion for fees under Section 1927 is therefore denied.

## Conclusion

For the foregoing reasons, this Court will not assess sanctions under Rule 11 or fees under Section 1927 against Carella, Byrne or Witco for their assertion and pursuit of the Counterclaim. In addition, the Court exercises its inherent equitable power and refuses to impose sanctions or award fees in the Movants' favor in order to protect the integrity of the trial process and penalize conduct that cannot be countenanced. *Cf. Gillette Foods, Inc. v. Bayernwald–Fruchteverwertung, GmbH,* 977 F.2d 809, 813 (3d Cir.1992) (citing *Chambers v. Nasco, Inc.,* — U.S. —, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

The motion for sanctions under Fed. R.Civ.Pro. 11 and for attorneys' fees under 28 U.S.C. § 1927 is therefore denied. An appropriate order follows.

## ORDER

This matter having come before the Court on a motion by Plaintiff Lightning Lube, Inc., and Third Party Defendant Ralph Venuto for sanctions under Fed. R.Civ.Pro. 11 and for attorneys' fees under 28 U.S.C. § 1927;

For the reasons set forth in the Court's opinion filed this day; and

For good cause shown;

It is on this 17th day of December, 1992 ORDERED that the motion is hereby DENIED.